**UNITED STATES of America,**

v.

**Paul MARDIROSSIAN, Defendant.**

**No. 11 Cr. 350 (JSR).**

United States District Court,
S.D. New York.

Oct. 13, 2011.

Sabrina P. Shroff, Federal Defenders of New York Inc., New York, NY, for Defendant.

Adam Sean Hickey, Christian R. Everdell, U.S. Attorney's Office, New York, NY, for United States of America.

*MEMORANDUM ORDER*

JED S. RAKOFF, District Judge.

On July 1, 2011, defendant Mardirossian moved to dismiss all of the charges against him on the ground that the extraterritorial application of United States law to his conduct violated the Due Process Clause. In the alternative, Mardirossian moved to dismiss Count IV, arguing that 18 U.S.C. § 924(c) does not apply extraterritorially. On September 13, 2011, the Court denied Mardirossian's motion to dismiss the indictment in its entirety, *see* transcript 9/12/11, but reserved judgment on the issue of whether § 924(c) applies extraterritorially. As explained in this Memorandum Order, the Court now denies Mardirossian's motion to dismiss Count IV of the Indictment, holding that § 924(c) applies extraterritorially in the circumstances of this case.

According to the Indictment, in February 2010 Mardirossian met with a confidential source from the DEA, who proposed exchanging cocaine for weapons that the confidential source would give to his associates in Colombia. Ind. ¶ 9(a). Defendant quoted prices to the confidential source, and a few months later in Panama he produced a bullet-proof vest to indicate the kind of materials he could provide. *Id.* ¶¶ 9(a)-(c). During a meeting in Panama, the informant told Mardirossian that he worked for the Colombian terrorist group known as "FARC," and Mardirossian responded that he knew what FARC was. *Id.* ¶ 9(d). In July 2010, the informant introduced Mardirossian to an unindicted

co-conspirator, who asked to purchase a sample of weapons from Mardirossian, including a rocket-propelled grenade launcher and an AK–47. *Id.* ¶ 9(f). On January 17, 2011, Mardirossian met with two DEA informants, who indicated that FARC needed the weapons quickly in order to attack an American military base before the completion of its construction. *Id.* ¶ 9(i). The next day, Mardirossian and his co-conspirator traveled to Panama to inspect the cocaine they would receive in exchange for the weapons. *Id.* ¶ 9(j). An informant told Mardirossian that the cocaine was bound for New York and offered him the opportunity to invest in the shipment. *Id.* ¶ 9(k). In response to that offer, Mardirossian, on March 21, 2011, caused a wire transfer of $20,000 to be sent to a bank account in New York. *Id.* ¶ 9(q). On April 7, 2011, Mardirossian arranged for a co-conspirator to deliver a grenade launcher and an AK–47 to an undercover officer in Copenhagen, Denmark. *Id.* ¶ 9(t).

Count IV of the Indictment charges Mardirossian with violating 18 U.S.C. § 924(c) by using firearms, specifically the grenade launcher and the AK–47, in relation to a drug trafficking crime. Mardirossian argues that the alleged use of firearms occurred in Denmark, and thus that § 924(c) does not apply because, he argues, that section does not apply to conduct outside the United States.

■ The Supreme Court has adopted a "legal presumption that Congress ordinarily intends its statutes to have domestic, not extraterritorial, application." *Small v. United States,* 544 U.S. 385, 388–89, 125 S.Ct. 1752, 161 L.Ed.2d 651 (2005). This presumption, however, has two exceptions. First, the presumption does not apply to criminal statutes that are "not logically dependent on their locality for the government's jurisdiction, but are enacted because of the right of the government to defend itself against obstruction, or fraud wherever perpetrated." *United States v. Bowman,* 260 U.S. 94, 98, 43 S.Ct. 39, 67 L.Ed. 149 (1922). Second, ancillary statutes, such as those criminalizing conspiracy, apply extraterritorially whenever the underlying statute does. *United States v. Yousef,* 327 F.3d 56, 87–88 (2d Cir.2003) ("[I]f Congress intended United States courts to have jurisdiction over the substantive crime of placing bombs on board the aircraft at issue, it is reasonable to conclude that Congress also intended to vest in United States courts the requisite jurisdiction over an extraterritorial conspiracy to commit that crime.").

■ While the Government argues that both exceptions apply in this case, it is doubtful that the exception identified in *Bowman* applies here. The Court in *Bowman* confronted a statute that criminalized defrauding a corporation in which the United States held stock. *Bowman,* 260 U.S. at 95, 43 S.Ct. 39. Here, in contrast, § 924(c) criminalizes conduct that does not directly victimize the United States. All crime can harm the United States indirectly, but it does not follow that all federal criminal statutes apply extraterritorially based on the Government's need to "defend itself." *Cf. United States v. Gatlin,* 216 F.3d 207, 211 n. 5 (2d Cir.2000) (noting that "Congress's intent to regulate conduct abroad may 'be inferred from the nature of the offense'" in *Bowman* (quoting *Bowman,* 260 U.S. at 98, 43 S.Ct. 39)). Nonetheless, because the Court concludes, as described below, that § 924(c) applies extraterritorially in this case as an ancillary statute, it need not finally decide whether *Bowman* provides an independent basis for § 924(c)'s extraterritorial application.

Section 924(c) is an ancillary statute. It applies only when the defendant uses a firearm "in relation to any crime of violence or drug trafficking crime ... for

which the person may be prosecuted in a court of the United States." 18 U.S.C. § 924(c)(1)(A). In his brief, defendant argues against this characterization on the grounds that the Government can convict under § 924(c) without even charging the underlying "crime of violence or drug trafficking crime." The same argument, however, would apply to conspiracy. Thus, the reasoning of *Yousef* applies here. Section 924(c) adds a weapon to the Government's arsenal whenever a criminal uses a gun. Given that Congress clearly intended the predicate statutes under which the Government charges Mardirossian to have extraterritorial application—something Mardirossian does not dispute—it may be inferred that, as in the case of any ancillary statute, Congress also intended to equip the Government with § 924(c)'s added power whenever a defendant uses a gun "in relation to" crimes punishable by those statutes. *Yousef*, 327 F.3d at 87–88. As a result, the Court holds that § 924(c) applies extraterritorially where the Government can prosecute a defendant's underlying extraterritorial "crime of violence or drug trafficking crime."

Accordingly, the Court hereby denies Mardirossian's motion to dismiss Count IV of the Indictment. The Clerk of the Court is hereby directed to close entry number sixteen on the docket of the case.

SO ORDERED.